THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Criminal No. 08-52 (RMU) |
| ) | |
| FRANKLIN MEJIA MACEDO ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MOTION TO SUPPRESS EVIDENCE RECOVERED FROM
DEFENDANT'S RESIDENCE
AND MEMORANDUM OF POINTS AND AUTHORITIES**

Franklin Mejia Macedo through counsel, respectfully moves this Court pursuant to the Fourth Amendment of the United States Constitution, and Rule 41(c) to suppress all evidence recovered as a result of the search of his residence at 4913 Kansas Ave., N.W, Washington, D.C.  Mr. Mejia Macedo asserts all evidence recovered during the search of 4913 Kansas Ave., N.W., Washington, D.C. must be suppressed because the search warrant was fatally defective in failing to provide adequate probable cause to believe that evidence of a crime would be found at the premises for which the warrant was issued.  Accordingly, the seized evidence and any "fruits' thereof must be suppressed.  The defendant requests an evidentiary hearing on this matter. In support of this motion, counsel states the following:

**FACTUAL BACKGROUND**[1]

On February 18, 2008, Agents of the Immigrations and Customs Enforcement (ICE) executed an arrest warrant for Yaneth Martinez on charges of Sex Trafficking in violation of Title 18, U.S.C. §1591 and Unlawful Transportation and Movement of an

---
[1] The defendants by no means adopts as true the version of events as provided by law enforcement and contained in this factual proffer.

Alien, Title 8, U.S.C. §1324(a)(1)(A)(ii).  During their arrest of Ms. Martinez which occurred at the exterior of 4913 Kansas Ave., N.W., Washington, D.C., law enforcement also encountered the defendant in this case, Franklin Mejia Macedo.  Based on information from a confidential source, law enforcement was aware that Mr. Mejia-Macedo lived with Ms. Martinez and was her boyfriend.

On or about February 20, 2008, law enforcement searched the complete residence of 4913 Kansas Ave., N.W., Washington, D.C.  The search was conducted pursuant to a warrant.   To obtain the warrant, law enforcement provided a Judge before this court an eight page Affidavit in Support of an Application for Search Warrant ("Affidavit").  The Affidavit was also accompanied with a two page Attachment setting out a list of the specific types of items which law enforcement sought to seize from the residence.  (see Affidavit, attachment A).  Review of the voluminous discovery provided by the government, reveals that many items were taken from the residence of 4913 Kansas Ave., N.W., Washington, D.C., including business cards, lists of names, numerical calculations and photographs.  It is unclear from the discovery whether or not Mr. Mejia Macedo was present at the residence at the time the warrant was executed.

## LEGAL PRINCIPLES

### A.  STANDING

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.   The Supreme Court has instructed that the "capacity to claim the protection of the Fourth Amendment depends … upon whether the person who claims the

2

protection of the Amendment has a legitimate expectation of privacy in the invaded place." *California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). There is a legitimate expectation of privacy "when the individual seeking Fourth Amendment protection maintains a 'subjective expectation of privacy' in the area searched that 'society [is] willing to recognize … as reasonable." *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

Here, the location in question at 4913 Kansas Ave., N.W., Washington, D.C., is Mr. Mejia Macedo's home. He resided at that location at the time of the search and seizure, however, he and Ms. Martinez only lived in the basement portion of 4913 Kansas Ave., N.W., Washington, D.C. The rest of the home was occupied by the actual owners of the residence. Society recognizes that one's home is one's castle and one's expectation of privacy in one's residence is so strong that it will be recognized even though the claimant is absent at the time of the search. *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

### B. PROBABLE CAUSE ANAYLSIS

A police officer seeking the issuance of a search warrant must present an affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Fourth Amendment itself provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists when there are reasonably trustworthy

facts which, given the totality of the circumstances are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of crime and will be present at the time and place of the search. *Umanzor v. United States,* 803 A.2d 983,(D.C. 2002*).* The supporting affidavit must make it apparent, that there is some nexus between the items to be seized and the criminal activity being investigated. *See Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

In this case, the averments in the Affidavit in Support of an Application for Search Warrant ("Affidavit") did not provide a sufficient nexus to the location to be searched. The Affidavit provided no factual basis to conclude that any illegal activity was being conducted out of the residence. Although, the Affidavit includes information from a confidential source that Yaneth Martinez was suspected of prostituting adult and minor females from Mexico and Honduras, and that Flores Rojas, after being arrested earlier that month, claimed that he sold or exchanged minor Mexican female aliens to Yaneth Martinez for the purpose of prostitution, in or around November 2007, the affidavit is silent on how this information supports a search of the residence.

Additionally, there is nothing in the Affidavit tying the items to be recovered to the location to be searched beyond mere **assumptions** that "you affiant …" believes "…that evidence, fruits, and instrumentalities of the violations of …" Sex Trafficking and Unlawful Transportation and Movement of an Alien, "… are presently located at the PREMISES as identified above and in Attachment B" (See Affidavit). The Affidavit is notably silent as to any evidence specifically tying the storage of such items to the residence. There are no averments regarding surveillance other than observing Ms. Martinez, defendant Mejia Macedeo and another female Sara Damary Lagos-Lopez in a

4

vehicle prior to the arrest of Ms. Martinez. The averments include a statement made by Ms. Lagos-Lopez in which she admits to being illegally in the United States working as a prostitute and to sharing the proceeds with Ms. Martinez. However, other than that surveillance, there are no other averments to any visual comings and goings near or at the residence. There is no indication from other persons that the house itself was somehow used to conduct the criminal activity of Sex Trafficking and Unlawful Transportation and Movement of an Alien. Law enforcement had so little knowledge about the residence and who lived where within that they caused a search of the whole house rather than just the basement. Mr. Mejia Macedo and Ms. Martinez resided in the basement of the house only. The two top floors were occupied by the owners of the residence, nevertheless, pursuant to the warrant the whole house was searched.

Establishing probable cause to believe that an individual has engaged in criminal conduct does not automatically lead to the conclusion that probable cause exists to search that person's home. *United States v. Savoca*, 739 F.2d 220, 225 (6th Cir. 1984). If the rule were otherwise, there would be no reason to distinguish search warrants from arrest warrants. In the words of the Supreme Court:

> The critical element in a reasonable search [of a persons' home] is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

"Residential searches have been upheld *only* where some information links the criminal activity to the defendant's residence." *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993). (Emphasis added.)  *See also, Bynum v. United States*, 386 A.2d 684, 686 (D.C. 1978) (warrant contained insufficient facts to support the search of a

5

person's home).   Here no such link exists.  To establish probable cause to believe that evidence would be found in 4913 Kansas Ave., N.W., Washington, D.C. , law enforcement utilized boilerplate averments based on the affiant's "belief." (See Affidavit).

The boilerplate "affiant's belief" utilized by law enforcement in the 4913 Kansas Ave., N.W., Washington, D.C., Affidavit without additional credible indicia to tie the location to the criminality at issue, is simply insufficient to satisfy the Fourth Amendment's requirement of probable cause to believe that a legitimate object of the search is located in a particular place.

"While an officer's 'training and experience' may be considered in determining probable cause, see e.g., *Texas v. Brown*, 40 U.S. 730, 742-43, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)…, it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit box [ ] and any criminal activity." *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994). The Court emphasized that to sustain the warrant under these circumstances "would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect – just the type of broad warrant the Fourth Amendment was designed to foreclose." Id at 1097-1098. (Emphasis in original.)[2]  *See also, Doe v. Broderick*, 225 F.3d 440, 452 (4th Cir. 2000), no probable cause justified search and seizure of patient records where affidavit offered nothing more than a guess based not on specific and

---

[2] *See also, United States v. Rios*, 881 F.Supp. 772, 775 (D. Conn. 1995) (holding that affidavit containing officer's expert opinion but no facts to support an inference that evidence of the defendant's criminality would be found at his home did not establish probable cause to search the home); *United States v. Gomez*, 652 F.Supp. 461, 463 (E.D.N.Y. 1987) (holding that although the issuing judge is entitled to "consider and credit" the expert opinion of a law enforcement officer, "it does not alone provide probable cause to search").  *Accord United States v. Feliz*, 20 F.Supp.2d 97, 103 (D.Me. 1998); *United States v. Kenney*, 595 F.Supp. 1453, 1461 (D. Me. 1984).

6

reliable facts but on a broad generalizations of "training and experience." *See also, Chavez Quintanilla v. United States*, 788 A.2d 564, 568 (D.C. 2002) (probable cause found only after considering, all the asserted facts, coupled with the officers training and experience as well as knowledge of the particular location).

In sum, given that the affidavit relies on the "affiant's belief" an even lesser standard than "training and experience" without any specifics tying 4913 Kansas Ave., N.W., Washington, D.C. , to any criminal activity, the 4913 Kansas Ave., N.W., Washington, D.C. , affidavit cannot pass constitutional muster.

### C. GOOD FAITH EXCEPTION DOES NOT APPLY

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that evidence need not be suppressed when police obtain evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause. However, the good faith exception does not extend to cases in which the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, *quoting Brown v. Illinois,* 4222 U.S. 590, 610-611 (1975) (Powell, J., concurring in part).

In this case, because of the complete absence of any information in the affidavit other than the boilerplate "affiant's belief," tying the location with the criminality under investigation, law-enforcement officers were not justified in relying upon the warrant under *Leon*. Simply put, a "reasonably well-trained officer would have known that more was needed to establish probable cause than what was contained in the affidavit." *United States v. Huggins*, 733 F.Supp. 445, 449-450 (D.D.C. 1990). See also *United States v.*

7

*Leake*, 998 F.2d 1359, 1367 (6th Cir. 1993) (reliance unreasonable when warrant was issued on basis of anonymous tip when officer failed to obtain required corroboration).

## CONCLUSION

Therefore, any physical evidence obtained from the 4913 Kansas Ave., N.W., Washington, D.C. must be suppressed as the fruit of unlawful searches. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Wherefore, for these reasons and any others put forth during a hearing on this matter, the defendant request that this motion be granted and that any evidence seized from 4913 Kansas Ave., N.W., Washington, D.C. be suppressed.

Respectfully submitted,

/s/

Elita C. Amato
Counsel to FRANKLIN MEJIA MACEDO
D. C. Bar # 442797
2009 N. Fourteenth St., Suite 708
Arlington, VA  22201
(703) 522-5900

## CERTIFICATE OF SERVICE

**I CERTIFY** that the above motion was filed electronically on July 10, 2008, causing service electronically upon all parties in this case.

/s/

**Elita C. Amato, Esq.**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE APPLICATION  :
OF THE UNITED STATES OF AMERICA   :
FOR A SEARCH WARRANT OF           :    Misc. Case No.
4913 KANSAS AVENUE, NW            :
WASHINGTON, DC                    :    <u>Under Seal</u>
                                  :

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1. Your affiant in this matter, Jason Scott Duey, is a Special Agent with the Immigration and Customs Enforcement (ICE), and has been so employed for approximately eleven years. During this time I have received training and possess relevant experience in investigating crimes committed against the United States. Furthermore, I am assigned to the ICE Charlotte Office of the Assistant Special Agent in Charge, and I investigate federal civil rights crimes, including alien smuggling, alien harboring, interstate transportation for prostitution, sex trafficking, and involuntary servitude.

2. The information contained in the Affidavit is based upon my personal observations and experience, in addition to information obtained from other law enforcement agents, witnesses and reports.

3. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

4. Your affiant respectfully submits this affidavit in support of an application for a warrant to search the residence of Yaneth Martinez, located at 4913 Kansas Avenue, NW, Washington DC. (The "PREMISES").

5. For the reasons set forth in this affidavit, there is probable cause to believe that there is located within this PREMISES, evidence, fruits, and instrumentalities of violations of 18

United States Code Section 1591, and Title 8 United States Code Section 1324(a)(1)(A)(ii).

**FACTS AND BACKGROUND:**

6. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 18 United States Code Section 1591, and Title 8 United States Code Section 1324(a)(1)(A)(ii) are presently located at the PREMISES.

7. On February 1, 2008, law enforcement officers received information from a Source who provided reliable and subsequently corroborated information to this investigation, that a woman named YANETH MARTINEZ a/k/a Janette Martinez a/k/a Janet Martinez a/k/a Lupita was suspected of prostituting adult and minor females from Mexico and Honduras.

8. YANETH MARTINEZ also repeatedly reported to the Source that she resided at 4913 Kansas Avenue NW, Washington DC.

9. YANETH MARTINEZ also told the Source that she co-habitated with her boyfriend, an adult male named FRANKLIN YASIR MEJIA-MACEDO, a/k/a FRANKLIN MEJIA, a/k/a FRANK MEJIA, a/k/a FRAN at the PREMISES located at 4913 Kansas Avenue NW, Washington.

10. The Source reported that he/she had learned that YANETH MARTINEZ handed out business cards to unknown men on streets in Washington DC, predominantly in Hispanic communities. Those business cards advertised such services as "Hair Cuts for Men Only," and "Flowers Home Delivery." Based upon my experience in investigating human

trafficking, interstate transportation for prostitution, and related offenses, I know that such language is commonly used as code language to advertise prostitution.

11. The business cards included the following names and phone numbers, Lupita - (202) 907-8404 and Fran - (202) 321-4550.

12. The Source noted that the number associated with Lupita on those cards ((202) 907 8404) matched the number that YANETH MARTINEZ had self-reported as her own phone number. Furthermore, agents called the telephone number for Lupita on those cards, and the call rang to the cellular telephone in the possession of YANETH MARTINEZ.

13. On or about February 7, 2008, the ICE Charlotte Office of the Assistant Special Agent in Charge received information from ICE Headquarters in Washington D.C. that Mexican alien minor females were trafficked by an adult man, JORGE FLORES-ROJAS ("FLORES-ROJAS")to Charlotte, North Carolina for the purposes of prostitution. This information further revealed that FLORES-ROJAS transported and moved the victims between Charlotte, North Carolina and other locations in the Untied States for purposes of engaging in commercial sex acts.

14. On February 8, 2008, ICE agents received reliable information that FLORES-ROJAS had moved the victims from Charlotte, North Carolina to Myrtle Beach, South Carolina. ICE Agents worked in concert with the Myrtle Beach Police Department officers to find FLORES-ROJAS at 536 Jennings Road in Myrtle Beach, South Carolina. The law enforcement officers surveilled this address and observed an unknown man, later identified as CESAR SAMPEREO-DE LA ROSA drive away with one of the Mexican alien females. Shortly thereafter, the law enforcement officers saw FLORES-ROJAS drive away with the

other Mexican alien female, both of whom were the reported victims. Myrtle Beach Police Officers then stopped both cars after observing both drivers make traffic violations, and law enforcement subsequently recovered the victims.

15. On February 9, 2008, ICE Agents subsequently interviewed both SAMPEREO-DE LA ROSA and FLORES-ROJAS.

16. FLORES-ROJAS waived Miranda rights, agreed to an interview, and provided the following information to law enforcement agents.

   a. He is an illegal alien from Mexico

   b. He had arranged for young women and girls to be smuggled to the United Sates, paid an unknown "coyote" (or alien smuggler) $2,500 per minor female to do so, and then received them from the coyote in his apartment in Charlotte, North Carolina so that they could engage in commercial sex acts at his instruction

   c. Because these young women and minor girls were becoming well-known among his prostitution customers in Charlotte, North Carolina, FLORES-ROJAS arrange for a sale or exchange of the minor female Mexican aliens to YANETH MARTINEZ in or around November 2007, so that the young women and girls could perform commercial sex acts at her instruction in and around Washington D.C.

   d. He later arranged for a reverse sale or exchange of the minor female Mexican aliens back from YANETH MARTINEZ on or about December 2007. Shortly after returning them to Charlotte, North Carolina, in or around December 2007 or January 2008, FLORES-ROJAS, took them to another new market in Myrtle Beach, South Carolina in order to perform commercial sex acts at his instruction in that venue.

e. FLORES-ROJAS indicated that at times during and relevant to the events described above, one or more of the young women and girls were minors under the age of 18.

17. On February 12, 2008, Immigration and Customs Enforcement agents in Charlotte, North Carolina obtained an arrest warrant for YANETH MARTINEZ on suspected charges of Sex Trafficking in violation of Title 18, United States Code 1591, and Unlawful Transportation and Movement of an Alien, in violation of Title 8, United States Code 1324(a)(1)(A)(ii).

18. On February 18, 2008, Immigration and Customs Enforcement agents executed the arrest warrant for YANETH MARTINEZ behind the PREMISES at 4913 Kansas Avenue NW, Washington DC.

19. Immediately prior to the arrest of YANETH MARTINEZ, agents observed her arriving at the PREMISES at 4913 Kansas Avenue NW, Washington DC, in a Green Toyota Corolla vehicle. Agents observed that YANETH MARTINEZ sat in the back seat of the vehicle, that FRANKLIN YASIR MEJIA-MACEDO was in the driver's seat and that an adult female, subsequently identified as Sara Damary Lagos-Lopez, was in the front passenger seat.

20. Agents also observed a second vehicle, a white van with the Maryland License Plate 94T 778, parked at the PREMISES at 4913 Kansas Avenue NW, Washington DC. The van had blue writing on back doors, "Transportes Zuleta Tel: 301-270-1072 Llame Gratis 1-888-751-8256." An official translation of that inscription into English is "Zuleta Transportation Tel: 301-270-1072 Call Free 1-888-751-8256."

21. YANETH MARTINEZ told agents that she was a native and citizen of Honduras. She admitted that she had been previously deported from the United States at or near McAllen, Texas. She further admitted to illegally re-entering the United States subsequent to her

deportation on or about August 25, 2005, at or near Brownsville, Texas. She further told agents that she had paid an unknown "coyote" or alien smuggler, $1,500 to illegally smuggle her back into the United States at that time.

22. During the arrest of YANETH MARTINEZ, agents also spoke to Sara Damary Lagos-Lopez, who had been sitting in the front passenger seat of the vehicle next to FRANKLIN YASIR MEJIA_MACEDO and in front of YANETH MARTINEZ. Sara Damary Lagos-Lopez told agents that her date of birth is July 25, 1983, (i.e. age 24) and that she was engaged in prostitution and turned over half of her earnings to YANETH MARTINEZ. She further stated that she is a native and citizen of Honduras who is illegally present within the United States.

23. During the arrest, agents spoke briefly to FRANKLIN YASIR MEJIA-MACEDO. During that conversation, FRANKLIN YASIR MEJIA-MACEDO admitted to agents that his name is Franklin Mejia, and that he resides with YANETH MARTINEZ at the PREMISES located at 4913 Kansas Avenue NW in Washington DC. FRANKLIN YASIR MEJIA-MACEDO further admitted that he is a native and citizen of Honduras who is illegally living in the United States. Computerized indices further reflect that FRANKLIN YASIR MEJIA-MACEDO was not admitted or paroled into the United States after inspection by an immigration officer.

24. When arrested, YANETH MARTINEZ was carrying a brown pocketbook containing the following:

    a. Mail matter addressed to the parents of Ms. Silvia Martinez (who upon information and belief is Yaneth Martinez's daughter) with an address of 4913 Kansas Ave, NW,

        Washington, DC.

    b.    A USAID photo identification card in the name of Janeth Martinez, which displayed a color photograph of Yaneth Martinez and listed as her address 4913 Kansas Ave, NW, Washington, DC.

25.    When the YANETH MARTINEZ was arrested, she pointed to 4913 Kansas Ave, NW, Washington, DC, and told your affiant "I live there." YANETH MARTINEZ also told your affiant that she lives in the basement of that location (4913 Kansas Avenue, NW), and that she rents the basement of the property for $500 per month.

## STATUTORY AUTHORITY

26.    This investigation concerns alleged violations of Title 18, United States Code, Section 1591, and Title 8 United States Code Section 1324(a)(1)(A)(ii).

27.    The relevant statutory text for purposes of this Affidavit is as follows:

    a.    Title 18, United States Code, Section 1591 makes it an offense to "knowingly—(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing that . . . the person has not attained the age of 18 years and will be caused to engage in a commercial sex act,"

    b.    Title 8 United States Code, Section 1324(a)(1)(A)(ii) makes an offense for any person to "knowing[ly] or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or

attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law."

## CONCLUSION

28. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that evidence, fruits, and instrumentalities of the violations of 18 United States Code Section 1591, and Title 8 United States Code Section 1324(a)(1)(A)(ii) are presently located at the PREMISES as identified above and in Attachment B.

29. Your affiant, therefore, respectfully requests that the attached warrants be issued authorizing the search and seizure of the items listed in Attachment A.

_____
JASON S. DUEY
SPECIAL AGENT,
IMMIGRATION AND CUSTOMS ENFORCEMENT

Sworn and subscribed before me
this 20th of February, 2008

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A: ITEMS TO BE SEIZED

Evidence, fruits, and instrumentalities of the violations of 18 United States Code Section 1591, and Title 8 United States Code Section 1324(a)(1)(A)(ii), namely,

1. Any and all items relevant or associated with Commercial Sex Acts (prostitution) in violation of the laws of the United States, including, but not limited to: condoms, sex toys, sexual lubricants, sexually suggestive clothing, sexually suggestive pictures, other prostitution paraphernalia, bedding, cellular telephones, computers, PDA's, pagers, credit cards, cameras, videos, identification documents, weapons, currency, client or customer lists, lists, ledgers, notebooks, papers, currency, wire transfer receipts, tokens, beads, playing cards, items indicating payment for commercial sex acts, medical records related to prostitution activities, medications and medical supplies relating to prostitution activities, including but not limited to contraceptives, anti-inflammatory medications, antibiotics, and abortion-inducing agents, homeopathic remedies, medicinal powders, business cards, lists of telephone numbers, bleach bottles, rubbing alcohol, feminine hygiene products, and all financial records.

2. Any and all evidence relevant to financial transactions related to prostitution operations, including but not limited to: monies, checks, checkbook registers, books, ledgers, bank account records, bank transaction receipts, wire transfer records including any and all Western Union records, currency, items of value and/or proceeds of prostitution, telegrams, photographs, financial transfers, purchases, invoices, credit cards, receipts, airline or bus tickets, records of expenditures, correspondence, unopened e-mails, postcards, merchandise, safes, storage containers, safety deposit box records or keys, and/or shipping documents.

3. Any and all evidence of entry into the United States by all persons involved in or related to the persons or properties identified in the affidavit of this warrant, including, but not limited to: both valid and false identification, travel, and immigration documents, immigration forms, travel records, passports, visas, entry documents of any kind, drivers licenses, receipts, photocopies, Rolodexes, indices reflecting the names, address, telephone numbers, pager number, fax number, telex numbers, and/or email addresses of possible co-conspirators, sources of supply, possible customers, financial institutions, possible victims of fraud or identity theft, and other individuals or businesses with whom a financial relationship exists.

4. Any and all evidence of interstate transportation of individuals associated with the businesses described in this warrant, including but not limited to airline itineraries, boarding passes, airline tickets, airline ticket receipts, airline luggage tags; itineraries, tickets, receipts, or luggage tags from other modes of transportation including but not limited to buses, trains, and taxis.

5. All cellular telephone, PDAs, and/or pagers or other communication devices, and related records, including but not limited to, monthly statements, bills, contracts, and/or calling

        cards and all information stored in the aforementioned devices.

6. Books, records, receipts, credit card statements, bank statements and records, money drafts, letters of credit, money orders and cashiers checks and receipts, passbooks, bank checks, bank deposit tickets, safes, safe deposit box keys, securities, memoranda and other evidence of financial transactions relating to obtaining, secreting, transferring, and/or concealing assets and/or obtaining secreting, transferring, concealing and/or spending money, whether stored in documentary or electronic form;

7. All address or telephone books, Rolodexes, indices reflecting the names, address, telephone numbers, pager number, fax number, telex numbers, and/or email addresses of possible co-conspirators, possible sources of supply, possible customers, financial institutions, possible victims, and other individuals or businesses with whom a financial relationship exists.

8. Indicia of occupancy, residency and/or ownership of the businesses and residence described above associated with the prostitution activities and interstate transportation for purposes of prostitution as described in the warrant, including, but not limited to, utility and telephone bills, cancelled envelopes, photographs, video cassettes, mail, and keys; whether stored in documentary or electronic form.

9. All records, documents, and materials, including but not limited to, tapes, cassettes, cartridges, streaming tape, commercial computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, video cameras, scanners in addition to computer photographs, Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, RM, and MPEG), and the data within the aforesaid objects relating to said materials, which may be, or are, used to advertise women used for prostitution or information pertaining to prostitution.

10. All photographs, videotapes, or other visual media and CDs, related to fruits, instrumentalities and evidence of violations of federal laws, specifically evidence, fruits, and instrumentalities of the violations of 18 United States Code Section 1591, and Title 8 United States Code Section 1324(a)(1)(A)(ii).

## ATTACHMENT B: DESCRIPTION OF PREMISES TO BE SEARCHED

The premises to be searched is 4913 Kansas Avenue, NW, Washington DC. That structure is described as a brick row-house with a steep staircase leading up to a front porch and the front door. At the top of the steps is a brick pillar with the numbers 4913 written in black and affixed to the top of the pillar. A planter filled with a red flowering plant is located on top of the pillar. The front door is covered by a metal grate door. A string of holiday lights is hanging off the gutter.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Criminal No. 08-52 (RMU) |
| ) | |
| FRANKLIN MEJIA MACEDO ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

ORDER

Upon consideration of Defendant's *Motion to Suppress Evidence Recovered From His Residence*, and any opposition, it is this _____ day of _____, 2008, hereby

**ORDERED** that defendant FRANKLIN MEJIA MACEDO'S motion is granted; and it is further

**ORDERED** that the government is precluded from introducing at trial any evidence recovered during the execution of a search warrant of Mr. Mejia Macedo's residence on or about February 20, 2008.

SO ORDERED.

Date:

_____
Ricardo M. Urbina
United States District Judge